FILED
DEC 1 1 2013
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) **4:13CR506 ERW/TCM** |
| RONALD L. ROBERTS, | ) ) |
| Defendant. | ) |

# INDICTMENT

The Grand Jury charges that:

### THE SCHEME

1. Beginning at a time unknown to the Grand Jury but at least as early as October 8, 2010 and continuing through December 10, 2013, Defendant RONALD L. ROBERTS, and others known and unknown to the Grand Jury, devised a scheme to defraud individuals into lending ROBERTS money based upon the materially false and fraudulent pretense, representation, and promise that their funds would be used to consummate a real estate transaction involving land owned by ROBERTS in or around Poplar Bluff, Missouri, when, in truth and fact, no such real estate transaction was pending, the land in question was worth substantially less than ROBERTS represented, and the funds were instead employed for ROBERTS's personal use, including but not limited to gambling.

### MANNER AND MEANS OF THE SCHEME

2. The manner and means of the scheme are further described as follows:

   a. ROBERTS employed various and shifting falsehoods in order to induce his victims to

part with their funds, but they all revolved around a central lie: that ROBERTS was engaged in a proposed real estate deal involving land owned by ROBERTS in or around Poplar Bluff, Missouri. ROBERTS represented to potential and current lenders that the property was being sold to a large developer or retailer, which ROBERTS sometimes represented to be Wal-Mart. ROBERTS repeatedly represented to potential lenders that he was preparing for the closing on that property, and that he required additional funds in order to be able to consummate the transaction. ROBERTS claimed to at least one lender that property to be sold constituted 164 non-contiguous acres. In some instances, ROBERTS claimed that the funds were needed to buy out the interests of family members, including his half-brother, who had purportedly asserted claims against the property; in others, he claimed that it was necessary to extinguish liens or perform environmental remediation; in yet others, he claimed that one or more parties associated with the transaction were demanding additional sums to close the transaction.

b. ROBERTS promised lenders that their money would be returned in a matter of days or weeks at most, usually with considerable interest, or that they would receive a portion of the profits that ROBERTS expected to generate from the fictitious transaction, which he variously claimed to be between approximately $7 million and approximately $22 million. The rate of return promised by ROBERTS varied from 0% to at least as much as 180%, with terms varying between a couple of weeks and a few hours.

c. In truth and fact, ROBERTS owned a piece of property, constituting less than ten (10) acres in size, in Neelyville, Missouri, more than ten (10) miles outside of Poplar Bluff, Missouri, that, as of the date of this Indictment, has a market value of less than $30,000.00 and which is encumbered by a judgment against ROBERTS in excess of $13 million, making the property

worthless to ROBERTS. During the scheme, Wal-Mart had not made and, as of December 10, 2013, does not intend to make any offer to purchase that property, nor does it have any present plans to develop additional land in or near Poplar Bluff, Missouri, where there is already an existing Wal-Mart store.

  d. ROBERTS employed additional falsehoods in order to conceal the fictitious nature of the real estate transaction. ROBERTS repeatedly stated to potential and current lenders that the real estate transaction was governed by a "confidentiality agreement" or "non-disclosure agreement," which ROBERTS claimed prevented him from discussing the particulars of the transaction. ROBERTS also often claimed that the existence of the agreement necessitated that any loan proceeds he received be furnished in cash. In truth and fact, no such agreement existed, and this representation was merely a subterfuge employed to avoid providing details that could have led the lender to investigate ROBERTS's claims and discover the fictitious nature of the transaction, and to avoid the use of conventional methods of transferring funds, such as checks and wire transfers, which might result in the generation of documentary evidence of ROBERTS's activities and alert bank officers and law enforcement officials as to the nature of ROBERTS's conduct.

  e. In order to induce lenders to part with their funds, ROBERTS often falsely presented the opportunity to lend as a short-fuse opportunity, i.e., that the closing was imminent, often within the next week, and that the funds were needed immediately or else the transaction would not occur. This misrepresentation was repeated numerous times throughout the scheme, even though the scheme lasted more than three years. The representation was made in order to place pressure on lenders to part with their funds and to console lenders who might otherwise question the unusually

high rate of return by lulling them into believing that the immediate need for the funds justified the high rate. On multiple occasions, ROBERTS represented during telephone conversations with lenders that he was physically at the title company waiting for the closing to be completed, which representation was false in that no such closing was ever even scheduled to occur.

f. ROBERTS also lulled lenders who demanded the return of their funds by making partial repayments to certain of those lenders in order to induce them to forbear taking any action that might reveal the fraudulent nature of the scheme. These repayments were not made from the revenue from any real estate transaction as ROBERTS had represented.

g. ROBERTS variously misrepresented that the funds being loaned to him were being held by a title company, by an attorney, by a bank, in an escrow account, or by another individual not named in this Indictment. ROBERTS misrepresented to numerous lenders that he was not gambling with the money they lent, when in truth and fact the vast majority of the funds contributed by lenders was used to gamble and to purchase chips and other gambling instruments at the River City Casino in Saint Louis, Missouri.

h. As a part and result of the scheme, ROBERTS fraudulently obtained in excess of $2,500,000.00 in funds lent by various individuals under the false pretenses, representations, and promises described above, of which more than $2 million was obtained in cash.

## COUNT I
### (Wire Fraud)

3. Each of the allegations in Paragraphs 1 through 2 of this Indictment is hereby incorporated by reference as if fully set forth herein.

4. On or about January 31, 2011, within the Eastern District of Missouri, having devised the above-described scheme to defraud and to obtain money or property by means of material false

4

and fraudulent pretenses, representations, and promises and for the purpose of executing and attempting to execute that scheme, the Defendant

**RONALD ROBERTS**

did knowingly transmit and cause to be transmitted by means of wire and radio communication in interstate commerce certain signs, signals, and sounds, to wit, a telephone call with an individual with the initials W.D., during which telephone conversation ROBERTS stated

> I got a deal down in Poplar Bluff, and I'm getting ready to get bought out by some people, but I've got a confidentiality, and my attorney has warned me to be very careful, you know, with that confidentiality that I got. I bought—what it is I bought a lot of my relatives out of the deal. My dad had died and two of the brothers had put quitclaims on the property, and I had to—I had to buy both of those drunk idiots out. And I had given them over a million bucks to get them out, so they soaked up all my cash, but in the meantime, I got—the quitclaim for one of the brothers was on there. They had a judgment, and they wouldn't pay the judgment off, so they left the judgment on my property and then, you know, when you—this other party, when you're delivering the, the deed to them, you've got have a clear title. And uh, it was a judgment for 132,000. I had a friend that gave me 20,000 dollars and this guy floated a check from the bank. The bank wasn't aware of what he was doing and they stopped payment on the cashier's check. And uh, got me all screwed up with that mess. The other guy didn't release the judgment, okay? So, the long story short of it is I got another buddy that—I was like 45,000 dollars short of getting this done. I got one buddy who said that he can get all but 16,000 dollars. I need 16,000 to get it done, and you tell me what would you want to do that in a short period of time, I'll make it worth your while.

and later stated

> Let me tell you what I'll do. And I don't want, you know, I don't want to—they say things too good to be true. I don't want to make something that—say something that scares you away, because I'm funny like that. And the only thing about it is it's not even about the money no more; it's about getting the peace of mind. It's not about the money. Okay, I tell you what: if you put up the 16, I'll give you 30 for doing it. I'll give you 30,000 plus your 16,000 back.

5

which representations were materially false in that they misrepresented that the funds proposed to be lent by W.D. would be used to pay off judgments against a property in or around Poplar Bluff, Missouri, when in truth and fact no such judgments existed and the funds were not intended by ROBERTS to be used for any such purpose.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT II
## (Wire Fraud)

5. Each of the allegations in Paragraphs 1 through 2 of this Indictment is hereby incorporated by reference as if fully set forth herein.

6. On or about March 30, 2011, within the Eastern District of Missouri, having devised the above-described scheme and artifice to defraud and to obtain money or property by means of material false and fraudulent pretenses, representations, and promises and for the purpose of executing and attempting to execute that scheme, the Defendant

### RONALD ROBERTS

did knowingly transmit and cause to be transmitted by means of wire and radio communication in interstate commerce a writing, to wit, an email addressed to an individual with the initials M.R., which email stated that

> My farthers [sic] brother has a judgement [sic] that was filed against the property that was left to me from my farther [sic]. The judgment is for 132,000. Needless to say, I have 118,000 that I have in cash to pay off this judgement [sic]. The buyers of course wants the property free and clear and with the two quit claim deeds I paid off it adds insult to injuries. What is needed now is fourteen thousand to pay the judgment off so I can get satisfaction of release for the judgement [sic], and take it to the title company.

which representations were materially false in that they represented that the funds proposed to be lent by M.R. would be used to pay off judgments against a property in or around Poplar Bluff,

6

Missouri, when in truth and fact no such judgments existed and the funds were not intended by ROBERTS to be used for any such purpose.

In violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT III
### (Mail Fraud)

7. Each of the allegations in Paragraphs 1 through 2 of this Indictment is hereby incorporated by reference as if fully set forth herein.

8. On or about March 27, 2012, within the Eastern District of Missouri, having devised the above-described scheme and artifice to defraud and to obtain money or property by means of material false and fraudulent pretenses, representations, and promises and for the purpose of executing and attempting to execute that scheme, the Defendant

**RONALD ROBERTS**

did cause to be deposited in an authorized depository for mail matter, a matter to be sent and delivered by the United States Postal Service, to wit, an envelope containing a check for $2,200.00, which funds ROBERTS induced an individual with the initials M.R. to convey to him through the material false pretenses, representations, and promises described above.

In violation of Title 18, United States Code, Sections 1341 and 2.

### COUNT IV
### (Wire Fraud)

9. Each of the allegations in Paragraphs 1 through 2 of this Indictment is hereby incorporated by reference as if fully set forth herein.

10. On or about May 8, 2013, within the Eastern District of Missouri, having devised the above-described scheme and artifice to defraud and to obtain money or property by means of

material false and fraudulent pretenses, representations, and promises and for the purpose of executing and attempting to execute that scheme, the Defendant

**RONALD ROBERTS**

did knowingly cause to be transmitted by means of wire and radio communication in interstate commerce certain signs, signals, and sounds, to wit, a wire transfer of funds in the amount of $57,000.00 from an account at Fidelity Investments in Cincinnati, Ohio, to an account at Regions Bank in Birmingham, Alabama, which funds ROBERTS induced an individual with the initials D.P. to transmit to him through the material false pretenses, representations, and promises described above.

In violation of Title 18, United States Code, Sections 1343 and 2.

### FORFEITURE ALLEGATION

11. Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1341 or 1343 as set forth in Counts I through IV, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to said offense.

12. The property subject to forfeiture includes but is not limited to the following:

    a. Up to $2,500,000 in chips, checks, vouchers, perks, funds, and other items of value credited to RONALD ROBERTS at, or obtained by RONALD ROBERTS through, the River City Casino, 777 River City Casino Boulevard, Saint Louis, Missouri 63125.

13. Also subject to forfeiture is a sum of money equal to the total value of any property,

`Case: 4:13-cr-00506-ERW   Doc. #: 2   Filed: 12/11/13   Page: 9 of 9 PageID #: 20`

real or personal, constituting or derived from any proceeds traceable to said offense.

14. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
RICHARD E. FINNERAN, #60768
Assistant United States Attorney